## DECLARATION OF JOHN WILLIAMS

I, John Williams, Special Agent with the Internal Revenue Service Criminal Investigation Division ("IRS-CI") do hereby declare:

### Introduction and Agent Background

1.     I am a Special Agent with the Internal Revenue Service - Criminal Investigation ("IRS-CI") and have been so employed since March 2022.  My responsibilities as a Special Agent with IRS-CI include the investigation of potential criminal violations of the Internal Revenue Code covered under Title 26 of the United States Code and other financial related offenses, particularly as found in Titles 18 and 31 of the United States Code.

2.     I earned a Bachelor of Science in Accounting from George Mason University in May 2021. In July 2022, I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. In November 2022, I graduated from the Special Agent Investigative Techniques program at the National Criminal Investigation Training Academy. During this training, I studied and completed a variety of classes in law enforcement, criminal investigation, money laundering, and investigative techniques, including search and seizure warrants related to violations of Internal Revenue laws and other financial related offenses.

### Purpose of This Declaration

3.     This declaration is submitted in support of a complaint for forfeiture *in rem* of the $181,346.50 in U.S. currency (the "Defendant Property") seized from the USAA Federal Savings Bank Account ending in x9719 on or about December 2, 2025.

4.     I submit that there are sufficient facts to support that the Defendant Property constitutes proceeds of wire fraud in violation of 18 U.S.C. § 1343, and/or is involved in money

laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and is thus subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and/or (C).

### Summary of Facts Supporting Forfeiture of the Defendant Property

Identity Theft

5.      "N.G." was born in February of 1970, and currently resides in Indian Head, Maryland.

6.      "M.A." was born in April of 1980 and currently resides in San Diego, California.

7.      According to IRS records, on or about August 21, 2023, a Form 1040, U.S. Individual Income Tax Return for tax year 2022 (hereinafter the "August Return") was electronically filed with the IRS in the name of M.A. with M.A.'s social security number and current address.

8.      This return requested a tax refund in the amount of $451,713 be paid via direct deposit into a USAA Federal Savings Bank Account ending in x9719 (the "Target Account").  The August Return is summarized as follows:

| Return Line Item | Amount |
|---|---|
| W-2 Wages Essential Healthcare Group | $60,000 |
| Total Income* | $60,000 |
| | |
| Standard Deduction | (12,950) |
| Total Taxable Income | $47,050 |
| | |
| 2022 Estimated Tax Payments from 2021 | 298,501 |
| Total Other Estimated Tax Payments | 159,186 |
| Total Tax Withheld or Payments* (a) | $457,687 |
| | |
| Tax Due (b) | (5,974) |
| Refund Due per Return* (a-b) | $451,713 |
| | |
| Interest | 11,930.43 |
| Total Refund Issued | $463,643.43 |
| | |
| Tax Preparer | Barbara J Braley |
| Tax Preparer | Melbourne, FL |
| *rounding | |

9. On March 10, 2025, M.A. was interviewed by federal law enforcement agents.

10. During the interview, M.A. was shown a copy of the August Return and confirmed she had not filed the August Return.

11. During the interview, M.A. was shown another 2022 Form 1040, U.S. Individual Income Tax Return that was filed with the IRS in the name of M.A. on or about November 17, 2023 (hereinafter the "November Return"). M.A. confirmed the November Return was her true and accurate tax return filed with the IRS.

12. M.A. confirmed she regularly rolls over her tax refund from prior years in

3

anticipation of taxes owed on her future tax returns.

13.    M.A. confirmed all payments listed in the table above should have been applied to the taxes she owed in 2022.

14.    On the November Return, M.A. reported a total tax due of $458,812 and total tax payments of $457,687.

15.    On the November Return, M.A. reported significantly more income than was reported on the August Return.  M.A. reported a tax balance due of $1,125 after accounting for all tax payments made to the IRS for tax year 2022.

16.    During the interview, M.A. asserted that she did not have and has never had a banking relationship with USAA.

17.    M.A. confirmed that the USAA account listed on the August return does not belong to her.

18.    In addition, M.A. confirmed she did not request nor authorize the filing of the August Return.

19.    M.A. confirmed the filing of the August Return was fraudulent and unauthorized, and she had not received any of the refund generated from the August Return.

20.     During the interview, M.A. identified CPA "J.P.," located in Escondido, CA, as her tax return preparer.

21.    When interviewed by law enforcement, J.P. confirmed that he was the tax preparer for the November Return.

22.    During the interview with M.A., M.A. stated that M.A. did not recognize the name "Barbara J Braley" and that M.A. did not authorize "Barbara J Braley" to file a federal tax return on her behalf.

23. Additionally, M.A. stated that M.A. did not recognize N.G.'s name.

24. M.A. confirmed she does not have any relationship with N.G. and that M.A. did not authorize the payment of her federal tax refund to N.G.'s account.

Tracing

25. The target account was opened on or about October 5, 2018.

26. On September 1, 2023, the IRS issued a tax refund via direct deposit in response to the fraudulent filing of the August Return with the IRS.

27. Since M.A. did not authorize the use of her tax information or the filing of her tax return, this entire tax refund issued by the IRS constitutes the proceeds of wire fraud.

28. The entire tax refund in the amount of $463,643.43 was deposited into the target account.

29. At the time of this deposit, the target account had an existing balance of approximately $4,990.38 in funds from an unknown source.

30. Between September 1, and September 11, 2023, approximately $253,500 in proceeds was transferred into a Bank of America account in the name of N.G. A majority of the $253,500 transferred to Bank of America was subsequently transferred, spent, or moved through various means including cryptocurrency, ATM withdrawals, teller cash withdrawals, and personal checks to other individuals.

31. Of the cryptocurrency transactions, approximately $207,000 was transferred to at least six individuals located in Nigeria.

32. In addition to the $253,500 in proceeds listed above, approximately $34,334.80 in proceeds were moved or spent directly from the target account between September 1 and October

5

3, 2023.  The $34,334.80 in proceeds were moved or spent through various means including ATM withdrawals, debit card purchases, and other payments or transfers.

33.    USAA found the financial transactions described above unusual and suspicious. Accordingly, USAA suspended access to the target account and froze all remaining funds.

34.    Per USAA, approximately $181,334.33[1] was left in the target account when the target account was frozen.

### Conclusion

35.    The evidence in this declaration provides probable cause to believe, and I do believe, that the Defendant Property constitutes proceeds of wire fraud in violation of 18 U.S.C. § 1343 and/or is involved in money laundering in violation of 18 U.S.C. § 1956, and is thus subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and/or (C).

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this _15__ day of April 2026.

John M. Williams Jr.
Digitally signed by John M. Williams Jr.
Date: 2026.04.15 12:39:35 -04'00'

_____

John Williams
Special Agent
Internal Revenue Service – Criminal Investigation

---

[1] The $2.17 difference between this amount and the amount seized by IRS-CI and sought by the government for forfeiture is attributable to interest accumulating on the sum after the account was frozen.